UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In the Matter of the Arbitration Between: DR.
GERALD R. FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                Petitioner,    REPORT AND
                                               RECOMMENDATION
    -and-                                  19 CV 486 (AMD)(RML)

POTENZA ELECTRICAL CORP. and
MICHAEL TARANTINO,

                Respondents.
-------------------------------------------------------------X
LEVY, United States Magistrate Judge:

       By order dated March 1, 2019, the Honorable Ann M. Donnelly, United States District Judge, referred this petition to confirm an arbitration award to me for Report and Recommendation. For the reasons explained below, I respectfully recommend that the award be confirmed and that petitioner be awarded $552,570.29 in damages, $2,308.50 in attorney's fees, and $475 in costs, for a total judgment of $555,353.79 as set forth below.

## BACKGROUND AND FACTS

       Petitioner, Dr. Gerald R. Finkel, commenced this action on January 24, 2019 pursuant to section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended, 29 U.S.C. § 1132(a)(3) and section 301 of the Labor Management Relations Act of 1947, codified as amended, 29 U.S.C. § 185. (Petition to Confirm Arbitration Award, dated Jan. 24, 2019 ("Pet."), Dkt. No. 1.) Petitioner is the Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), which serves as administrator and fiduciary of various multiemployer benefit plans (the "Plans") for members of Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"). (Id. ¶¶ 4-5.)

Respondent Potenza Electrical Corporation ("Potenza") is a New York corporation with its principal place of business at 123 Bayview Avenue in Amityville, New York. (Id. ¶ 13.) Respondent Michael Tarantino ("Tarantino") is the president and owner of Potenza. (Id. ¶ 14.)

As a member of the New York Electrical Contractors Association (the "NYECA"), Potenza agreed to abide by the terms of a Collective Bargaining Agreement (the "CBA") between the Union and the NYECA, for the period of May 11, 2016 through April 10, 2019. (Id. ¶ 15.) The CBA required Potenza to pay a weekly Union Assessment and to make weekly contributions to each of the Plans (collectively, the "JIB contributions"), with the exception of the Deferred Salary Plan (the "DSP"). (Id. ¶¶ 6, 12.) With respect to the DSP, Potenza was required to deduct a specified percentage of the weekly wages of eligible employees and remit those amounts, along with an employer contribution, to the DSP (the "DSP contributions"). (Id. ¶¶ 8, 11)

The CBA provides that Potenza will be bound by the terms of the Plan and Trust documents established by petitioner, which include the Policy for the Collection of Delinquent Contributions (the "Collection Policy") and the Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits (the "Arbitration Procedures"). (See id. ¶¶ 17, 19-20; Collective Bargaining Agreement, effective May 11, 2016 through April 10, 2019, Ex. A to Pet., art. 2, § 12(a); Collection Policy, Ex. B to Pet.; Arbitration Procedures, Ex. C to Pet.) It further provides that, in the event of a delinquency in contributions, Potenza will be liable for the remedies available under section 502(g)(2) of ERISA. (See Pet. ¶ 18; Collective Bargaining Agreement, § 12(a)); see also 29 U.S.C. § 1132(g).

A dispute arose when Potenza failed to remit JIB and DSP contributions for the payroll weeks ending August 15, 2018 through November 28, 2018 and amounts owed on two

dishonored checks that it had sent petitioner. (See Pet. ¶ 26.) One of those checks, number 2545, appears to have been intended to cover earlier JIB and DSP contributions. (See Summary Sheet, Ex. F to Pet.) The other check, number 2547, was intended to cover interest owed pursuant to an earlier stipulation (the "Stipulation Interest"), for which Tarantino had agreed to be held jointly and severally liable with Potenza. (See id.; see also Pet. ¶ 31; Stipulation of Settlement and Forbearance, dated Feb. 13, 2018 (the "Stipulation"), Ex. G to Pet.).)

Pursuant to the Collection Policy and Arbitration Procedures, petitioner pursued arbitration before the designated arbitrator, Thomas J. Lilly, Jr., Esq., who held a hearing on December 4, 2018. (Pet. ¶¶ 27, 29.) Respondent did not appear at the hearing, despite receiving notice of when and where it would occur. (See Arbitration Award, dated Dec. 17, 2018 (the "Award"), Ex. H to Pet., at 2; Notice of Intention to Arbitrate and Statement of Claims, dated Oct. 24, 2018, Ex. D to Pet.) On December 17, 2018, the arbitrator issued an award requiring Potenza to pay the JIB a total of $552,570.29, consisting of (1) $417,678.97 in unpaid JIB and DSP contributions, (2) $7,952.54 in interest, (2) $33,710.82 in liability for the dishonored checks, (3) $90,277.96 in liquidated damages, (4) $1,550.00 in attorney's fees and costs, and (5) $1,400 in arbitration fees. (See Pet. ¶ 33; Award at 7-8.) The arbitrator additionally found Tarantino to be jointly and severally liable for $5,534.63 of the total award amount. (Award at 8.)

After respondents failed to abide by the award, petitioner commenced this action, requesting (1) confirmation of the award, (2) damages in the amount of $552,570.29, plus interest from the date of the award through the date of entry of judgment, (3) judgment against Tarantino in the amount of $5,534.63, and (4) attorney's fees and costs of $3,300.50. (Pet. at 9-10.) When neither respondent answered or otherwise moved with respect to the petition, despite

being properly served (see Affidavit of Service of Mary M. Bonville, sworn to Feb. 5, 2019, Dkt. No. 8; Affidavit of Service of Bruce Kustka, sworn to Feb. 11, 2019, Dkt. No. 9), petitioner moved for summary judgment and requested that the petition be deemed unopposed. (See Letter of John M. Harras, Esq., dated Mar. 4, 2019, Dkt. No. 10.) Petitioner served its motion on both respondents by first-class mail. (See Affidavit of Service of Tyree Grant, sworn to Mar. 4, 2019, Dkt. No. 11.) To date, neither respondent has opposed the motion or contacted the court.[1] On March 1, 2019, Judge Donnelly referred petitioner's motion to me. (Order Referring Motion, dated Mar. 1, 2019.)

## DISCUSSION

### A. Legal Standard

Courts in this circuit treat a respondent's failure to respond to a petition to confirm an arbitration award as an unopposed motion for summary judgment. D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). In order to prevail, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). However, "in the context of a petition to confirm an arbitration award, the burden is not an onerous one." Finkel v. Pomalee Elec. Co., No. 16 CV 4200, 2018 WL 1320689, at *5 (E.D.N.Y. Feb. 22, 2018) (quoting 1199/SEIU United Healthcare Workers E. v. S. Bronx Mental

---

[1] Because petitioner moved for summary judgment, rather than for default judgment, no certificate of default has been issued in this case. Because respondents had notice of the action and of petitioner's motion, but nonetheless failed to respond, I find it appropriate to proceed to a ruling on the motion. See Feel Better Kids, Inc. v. Kids in Need, Inc., No. 06 CV 23, 2012 WL 4483000, at *3 n.8 (E.D.N.Y. Aug. 8, 2012) (ruling on motion for default judgment, despite the lack of a certificate of default, where the defendants had notice of the motion), report and recommendation adopted, 2012 WL 4483874 (E.D.N.Y. Sept. 12, 2012).

Health Council Inc., No. 13 CV 2608, 2014 WL 840965, at *6 (S.D.N.Y. Mar. 4, 2014)), report and recommendation adopted, 2018 WL 1318997 (E.D.N.Y. Mar. 14, 2018).

Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co., 462 F.3d at 110 (internal quotation marks and citation omitted).  Courts must grant an arbitrator's decision "great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003).  The arbitrator's rationale need not be explained, and the award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 984 F.2d 117, 121 (2d Cir. 1991)).  Only "a barely colorable justification for the outcome reached" is necessary to confirm the award.  Id.  Especially in the context of labor disputes, federal policy favors the enforcement of arbitration awards.  See Pomalee Elec. Co., 2018 WL 1320689, at *5.

**B. Analysis**

1. Liability and Damages

Petitioner requests confirmation of the award and damages of $552,570.29.  (Pet. at ¶ 46.)  At the December 4, 2018 arbitration hearing, which respondents did not attend, petitioner put forth evidence of respondents' liability for the amounts owed.  (See Pet. ¶ 30; see also Award at 2-3.)  After reviewing petitioner's evidence, the arbitrator awarded petitioner a total of $552,570.29, representing $417,678.97 in unpaid JIB and DSP contributions, $33,710.82 for the dishonored checks, $7,952.54 in interest, $90,277.96 in liquidated damages, $1,550.00 in attorney's fees and costs, and $1,400 in arbitration fees.  (See Award at 6-7.)  The arbitrator further found Tarantino to be jointly and severally liable for $5,534.63 of the total award amount,

5

representing the $2,153.86 in Stipulation Interest, $430.77 in liquidated damages on that amount, and the portions of the award owing to attorney's fees, costs, and arbitration fees.[2] (Id. at 6.)

Having reviewed petitioner's submissions, as well as the award itself, I find that petitioner has met its summary judgment burden and that more than a barely colorable justification exists for the award. Therefore, I respectfully recommend that the award be confirmed, that Potenza be ordered to pay the total award amount of $552,570.29, and that Tarantino be held jointly and severally liable with Potenza for $5,534.63 of that amount.

2. Attorney's Fees and Costs

Petitioner requests $2,825.50 in attorney's fees and $475 in costs for work associated with this action. (Pet. ¶¶ 44-45.) Pursuant to the terms of the Collection Policy, petitioner is entitled to an award of reasonable attorney's fees and costs. (See Collection Policy, art. II, § E(2).) Moreover, "[w]hen a party fails to abide by an arbitrator's decision without justification, attorney's fees and costs may be awarded." New York City & Vicinity Dist. Council of Carpenters v. Sukhmany Constr. Inc., No. 16 CV 6360, 2018 WL 2078479, at *6

---

[2] Liability against Tarantino was based on the Stipulation, which settled a prior dispute between respondents and petitioner and provided, in relevant part, that "Tarantino hereby issues a personal guarantee to secure the Indebtedness, plus any additional contributions owed, interest, and legal fees that are owed or may be owed under the Plans." (Stipulation ¶ 21.) Tarantino signed the Stipulation twice, once in his personal capacity and once on behalf of Potenza. (See id.) While it is a general rule in this circuit that "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager," Sasso v. Cervoni, 985 F.2d 49, 50 (2d Cir. 1993), a corporate officer may be held individually liable where there is "clear and explicit evidence" of the parties' intent that he or she be held personally liable. Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co., 301 F.3d 50, 53 (2d. Cir. 2002) (per curiam). In this case, the Stipulation is sufficient evidence of the parties' intent that Tarantino be held jointly and severally liable for the amounts covered by that agreement. See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 283 (E.D.N.Y. 2010) (holding principal jointly and severally liable based on a similar stipulation, where principal signed twice); see also Pomalee Elec. Co., 2018 WL 1320689, at *13 (same).

(E.D.N.Y. Jan. 29, 2018) (internal quotation marks omitted), report and recommendation adopted, 2018 WL 1459457 (E.D.N.Y. Mar. 23, 2018).

In calculating a reasonable fee award, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In determining a reasonable hourly rate, a court considers the rates in the community in which the action is pending and the skill and experience of the attorneys working on the case. Luciano v. Olsten Corp., 109 F. 3d 111, 115-16 (2d Cir. 1997). The "community" is generally considered to be the district where the court sits. See Arbor Hill, 522 F.3d at 190. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994). "Courts have broad discretion to assess the reasonableness of each component of a fee award." Jaramillo v. Banana King Rest. Corp., No 12 CV 5649, 2014 WL 2993450, at *8 (E.D.N.Y. July 2, 2014).

Here, petitioner's request for fees is based on the rate of $275 per hour for the work of John M. Harras and Nicole Marimon, two associates at Virginia & Ambinder, LLP ("V&A"). (Pet. ¶¶ 40-41.) Mr. Harras graduated from St. John's University School of Law in 2015 and Ms. Marimon graduated from Fordham University School of Law in 2014. (Id.) Both Mr. Harras and Ms. Marimon have handled numerous ERISA collection actions. (Id.) Petitioner also requests fees based on the rate of $120 per hour for the work of a legal assistant. (Id. ¶ 42.) Based on the prevailing rates in this district, I find these requests to be unreasonably high.

In the Eastern District of New York, courts typically "award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100

7

per hour for paralegals." Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. Northcoast Maint. Corp., 17 CV 5072, 2018 WL 2471201, at *4 (E.D.N.Y. May 4, 2018), report and recommendation adopted, 2018 WL 2465351 (E.D.N.Y. June 1, 2018).  Recent fee awards in this district for similar work by associates have ranged from $200 to $250 per hour.  See, e.g., Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Genrus Corp., No. 18 CV 4232, 2019 WL 4604972, at *8 (E.D.N.Y. Sept. 6, 2019) (approving rate of $250 per hour for Ms. Marimon and another V&A associate), report and recommendation adopted, 2019 WL 4602880 (E.D.N.Y. Sept. 23, 2019); Finkel v. IAG Elec., Inc., No. 19 CV 3075, 2019 WL 3281012, at *2-3 (E.D.N.Y. July 19, 2019) (reducing Ms. Marimon's rate to $250 per hour from requested $350 per hour); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. Cali Enters., No. 18 CV 3556, 2019 WL 2076784, at *6 (E.D.N.Y. May 10, 2019) (reducing Ms. Marimon's rate to $200 per hour from requested $225 per hour); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. W.B.E. Walls & Ceilings, Inc., No. 18 CV 6444, 2019 WL 2079825, at *6 (E.D.N.Y. May 10, 2019) (reducing Ms. Marimon's rate to $200 per hour from requested $225 per hour); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. State Wide Installation, Inc., 18 CV 6074, 2019 WL 2109855, at *5 (E.D.N.Y. Apr. 24, 2019) (approving rate of $225 per hour for Ms. Marimon), report and recommendation adopted, 2019 WL 2106176 (E.D.N.Y. May 14, 2019); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. Patriot Field Servs., No. 18 CV 5825, 2019 WL 1333256, at *4 (E.D.N.Y. Mar. 25, 2019) (approving rate of $225 per hour for Ms. Marimon).  Given the rates typically awarded in this district, I respectfully

recommend that the time of Ms. Marimon and Mr. Harras be compensated at the rate of $225 per hour.

V&A additionally billed a legal assistant's time at a rate of $120 per hour. (Pet. ¶ 42.) In recent cases in this district, courts have awarded fees based on rates of $80 to $100 per hour for the work of legal assistants and paralegals in connection with arbitration confirmation proceedings. See, e.g., Genrus Corp., 2019 WL 4604972, at *8 (approving rate $80 per hour for paralegals); Cali Enters., 2019 WL 2076784, at *6 (reducing rate for legal assistant to $90 per hour from requested $100 per hour); Patriot Field Servs., 2019 WL 1333256, at *4 (approving hourly rate of $100 for legal assistants); Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. Bonded Waterproofing Serv., Inc., No. 17 CV 3896, 2018 WL 6173439, at *6 (E.D.N.Y. Nov. 26, 2018) (reducing rate for legal assistant to $90 per hour from requested $100 per hour). Based on the prevailing rates in this district, I respectfully recommend that the legal assistant's time be compensated at the rate of $90 per hour.

Petitioner requests compensation for 10.5 hours of work (9.8 hours for Mr. Harras, .3 hours for Ms. Marimon, and .4 hours for a legal assistant with the initials "TG"). (Pet. ¶ 44; Time Records, Ex. I to Pet.) While counsel's time expenditures on this matter were greater than in other recent arbitration confirmation proceedings, see, e.g., IAG Elec., Inc., 2019 WL 3281012, at *3 (finding 1.7 hours reasonable); Cali Enters., 2019 WL 2076784, at *7 (finding 1.2 hours reasonable); W.B.E. Walls & Ceilings, 2019 WL 2079825, at *7 (finding one hour reasonable); State Wide Installation, Inc., 2019 WL 2109855, at *5 (finding 1.9 hours reasonable); but see Genrus Corp., 2019 WL 4604972, at *8 (finding 25.8 hours reasonable), I find based on the time records counsel has submitted that the time spent was reasonable.

Therefore, I respectfully recommend that petitioner be awarded $2,308.50 in attorney's fees (($225 x 10.1) + ($90 x .4)).

Petitioner additionally requests $475 in costs, consisting of this court's filing fee and service charges. (Pet. ¶ 45.) Courts in this district "routinely award" such costs. Gesualdi v. Scara-Mix, Inc., No. 14 CV 765, 2017 WL 5564673, at *10 (E.D.N.Y. Nov. 17, 2017). Therefore, I respectfully recommend that petitioner's request for costs be granted.

Petitioner asserts, without elaboration, that it seeks attorney's fees and costs "against Respondents." (Pet. at 10.) The court construes this as a request that Potenza and Tarantino be held jointly and severally liable for the total fee award. "The allocation of fee liability is a matter committed to the district court's discretion." Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990), partially abrogated on other grounds by Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598 (2001); see also Trs. of Local 813 Pension Tr. Fund v. Canal Carting, Inc., No. 12 CV 60, 2014 WL 843244, at *18 (E.D.N.Y. Mar. 4, 2014). The court may apportion fees between responsible parties "where the claims against the defendants are separate and distinct or where culpability is significantly unequal." Koster, 903 F.2d at 139. In determining how to apportion fees, a district court may consider "a variety of factors," including "the relative culpability of the parties and the proportion of time spent litigating against each defendant." Id. (internal citations omitted). The court should "make every effort to achieve the most fair and sensible solution that is possible." Id. (citation omitted).

In this case, it is difficult to determine the proportion of time spent litigating against each respondent and petitioner provides no suggestion for how to do so. However, the court notes that the $5,534.63 in damages for which Tarantino is jointly and severally liable with Potenza represents approximately one percent of the total award amount of $552,570.29. Given

10

the stark difference in monetary culpability between Tarantino and Potenza, I find it would be unfair to hold Tarantino jointly and severally liable with Potenza for attorney's fees and costs. Therefore, I recommend that attorney's fees and costs be awarded only against Potenza.

3. Pre-Judgment Interest

Finally, petitioner requests pre-judgment interest running from the date of the award through the date of entry of judgment. (Pet. at 10.) While "[t]he decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court," there is a presumption in the Second Circuit in favor of awarding pre-judgment interest, particularly where "the agreement between the parties states that an arbitration decision is final and binding." Pomalee Elec. Co., 2018 WL 1320689, at *12 (quoting Abondolo v. Milton Abeles, Inc., No. 10 CV 494, 2010 WL 5491133, at *3 (E.D.N.Y. Sept. 9, 2010)). Here, the Arbitration Procedures provide that an award entered by a neutral arbitrator "shall be final and binding." (Arbitration Procedures, § IX(B).) Therefore, I recommend an award of pre-judgment interest running from December 17, 2018 through the date of entry of judgment.

ERISA provides that "interest on unpaid contributions shall be determined using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, the Collection Policy provides that "[i]nterest shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code" (the "Section 6621 rate"). (Collection Policy, art. II, § E(1).)[3] The Section 6621 rate was five percent per annum during the

---

[3] The petition asserts that the National Electrical Benefit Plan ("NEBF") uses a separate interest rate of ten percent. (Pet. ¶ 22.) However, petitioner provides no information as to which portion of the unpaid contributions are owed on the NEBF. Nor does petitioner provide interest calculations or suggest a method of calculating interest. Therefore, the court will apply the Section 6621 rate to all unpaid contributions.

relevant period.  See Table of Interest Rates from January 1, 1999–Present: Corporate Overpayments and Underpayments, Rev. Rul. 2019-05, 2019 WL 982238.

The total amount of unpaid contributions in this case is $449,235.93, consisting of $277,500.33 in unpaid JIB contributions, $140,178.64 in unpaid DSP contributions, and $31,556.96 for dishonored check number 2545.[4]  (See Summary Sheet.)  This results in a per-diem rate of $61.54 ($449,235.93 x .05/365).  Because the portions of the award for which Tarantino is liable do not include any portions owing to unpaid contributions, I respectfully recommend that pre-judgment interest be assessed only against Potenza.  See 29 U.S.C. § 1332(g) (providing an award of "interest *on the unpaid contributions*") (emphasis added).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the award be confirmed and damages be awarded as follows:

(1) Potenza be held liable for the total award amount of $552,570.29, plus pre-judgment interest on the unpaid contributions accruing at a rate of $61.54 per day from the date of the award through the date of entry of judgment, attorney's fees of $2,308.50, and costs of $475.

(2) Tarantino be held jointly and severally liable with Potenza for $5,534.63 of the total award amount.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Donnelly and to my chambers within fourteen (14)

---

[4] I do not include check number 2547 in my pre-judgment interest calculations, as that check was intended to cover interest rather than unpaid contributions.  (See Summary Sheet.)

days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).  Petitioner is directed to serve copies of this Report and Recommendation on respondents by regular mail, and to file proof of service within ten days of the date of this Report and Recommendation.

    Respectfully submitted,

    /s/
    ROBERT M. LEVY
    Unites States Magistrate Judge

Dated: Brooklyn, New York
    November 26, 2019